acm/jar

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MOHAMMAD MANSOORI,        )
                                )
               Plaintiff,     )
                                )
vs.                              )
                                )    Case No. 04-3241-JAR
HARLEY G. LAPPIN, et al.,     )
                                )
              Defendants.    )
_____)

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

The Court now considers: defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 46);[1] plaintiff's Motion to Strike Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 48); and plaintiff's Motion for Appointment of Counsel (Doc. 52).

### *Background*

This is a civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau*

---

[1]The Court recognizes that defendants' Motion to Dismiss cites Fed. R. Civ. P. 12(b)(5) and (b)(6) as the grounds for dismissal. However, defendants' Memorandum in Support of its Motion to Dismiss relies on Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(4), (b)(5) and (b)(6). The Court will construe defendants' Motion to include Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(4).

*of Narcotics*,[2] against a number of Bureau of Prisons (BOP) officials and personnel at the United States Penitentiary (USP) Leavenworth.[3]   Plaintiff, a *pro se* litigant, claims that he was assaulted by the environmental tobacco smoke ("ETS") at USP Leavenworth from the cigarette smoke of other inmates' and USP Leavenworth staff, thereby subjecting him to cruel and unusual punishment in violation of the Eighth Amendment.   Plaintiff alleges that he is a non-smoking chronic asthma sufferer and cardiac patient whose symptoms have been exacerbated by defendants' failure to prevent his exposure to ETS.   Plaintiff asserts that prison officials ignored his complaints regarding ETS exposure. Plaintiff has exhausted his administrative remedies for his complaints that he was exposed to ETS from January 2003 to June 2003.[4]   Plaintiff filed this action on August 4, 2004, seeking compensatory and punitive damages as well as injunctive relief.

### Facts

From January 15, 2003 to July 11, 2003, plaintiff was housed in C Cell House at USP Leavenworth.   In 2002, C Cell House was designated as a non-smoking unit.   This designation was altered in January 2003 when other inmates were moved to C Cell House to accommodate renovations in other cell houses.   From January 2003 to July 2003, smoking was allowed in certain designated areas of C Cell House, but prohibited in other designated areas of C Cell House.   Plaintiff claims that

---

[2]403 U.S. 388 (1971).

[3] The named defendants are: Harley G. Lappin, Kathleen Hawk-Sawyer, Harrell Watts, G.L. Hershberger, Eddie J. Gallegos, William B. McCollum, Brian R. Jett, Rick Veach, Helen Marberry, Daniel A. Nitchals, Eric Wilson, William Howell, Jr., Robert Bennett, Mark Sedillo, Gloria Buser, R. D. Swanson, the Estate of N. Lee Conner, John Doe One, and Federal Bureau of Prisons Inmate Trust Fund.

[4]Defendants and plaintiff concede that this action only addresses plaintiff's complaints for ETS exposure from January 2003 to June 2003.  If plaintiff wishes to assert claims for exposure to ETS outside of January 2003 to June 2003, he must first exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a).

between January and July 2003, known smokers were placed in his cell, in violation of a USP

Leavenworth policy that prohibited smoking in this designated area.  Defendants assert that they

enforced the non-smoking policy in the designated non-smoking area and disciplined inmates who

violated this policy.

Plaintiff filed administrative complaints regarding the enforcement of the smoking policies.

Plaintiff's first complaint was filed on January 28, 2003, in which he requested that all smokers be

removed from C Cell House and that the commissary stop selling tobacco products to inmates housed

in those units.  In a memorandum response, USP Leavenworth Warden N. Lee Conner noted that

plaintiff had told his unit manager that plaintiff's cell mate did not smoke in their cell.  Plaintiff denies

making this statement.  Warden Conner's memorandum further stated that the unit manager had

advised plaintiff's cell mate that he could not smoke in their cell and that the C Cell House had

designated floors for non-smoking.

Plaintiff appealed the denial of his administrative complaint.  Plaintiff alleged the same claims, as

well as a claim that second hand smoke in other rooms of the cell house was recirculating through the

vents into his cell.  Plaintiff again requested that all smokers be removed from C Cell House.  Defendant

G.L. Hershberger denied plaintiff's appeal, finding that the assignment of smoking inmates to C Cell

House was a temporary measure designed to accommodate renovations and that smoking was

prohibited outside of designated areas in C Cell House.

Plaintiff further appealed to Harrell Watts, Administrator of National Inmate Appeals for the

BOP.  Watts denied plaintiff's appeal, finding that smoking outside of designated areas is prohibited by

the BOP and inmates who violate this smoking policy are disciplined.  Watts further found that in C Cell

3

House, inmates were only allowed to smoke in their closed cells.  He advised plaintiff that upon notification, the prison would make accommodations to separately house smoking and non-smoking inmates.

Plaintiff alleges that he is a non-smoking chronic asthma sufferer and cardiac patient, whose health problems have been exacerbated by exposure to ETS.  Plaintiff notes that on January 16, 2003, he was taken to a hospital for complaints of chest pains.  Defendants allege that plaintiff's medical records do not indicate a history of asthma; and defendants deny that plaintiff's health problems have been affected by the alleged ETS exposure.

## *Discussion*

Defendants move to dismiss, or alternatively for summary judgment, on four grounds. Some defendants move to dismiss under Fed. R. Civ. P. 12(b)(2), for no personal jurisdiction; and some defendants move to dismiss under Fed. R. Civ. P. 12(b)(4) and 12(b)(5) for insufficiency of process and service of process.  All defendants move to dismiss under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity, or alternatively, the defendants are protected by qualified immunity.  All defendants also move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or alternatively for summary judgment. Defendants further argue that plaintiff's claim for injunctive relief should be denied as moot.

### A.    Subject Matter Jurisdiction

There are two statutory bases for federal subject matter jurisdiction.  First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exists.

4

Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction.  In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[5]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." . . . Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." . . . Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation." Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.[6]

Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[7]  Mere allegations of jurisdiction are not enough.[8]

The Court must construe *pro se* pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[9]  However, the Court may not provide additional factual allegations "to

---

[5] 28 U.S.C. § 1367.

[6] *Penteco Corp. v. Union Gas System,* 929 F.2d 1519, 1521 (10th Cir. 1991) (internal citations and quotations omitted).

[7] *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[8] *Id.* at 798.

[9] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[10]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[11]

While defendants argue that plaintiff's Complaint should be construed as one against the United States, plaintiff states in his Complaint that he is suing the defendants in their individual capacities. Because of the liberal construction required for *pro se* pleadings, the Court construes plaintiff's action as against defendants both in their individual capacities and their official capacities as BOP officials.

As federal officials, defendants may be held *individually* liable for actions taken under color of federal authority.[12]  In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court held that plaintiffs may seek damages from federal officials in their individual capacities for violations of the Fourth Amendment.[13]  Courts since *Bivens* have characterized additional constitutional claims against federal officials as *Bivens* claims.[14]

### 1. Official Capacity Claims

A plaintiff may not establish liability under *Bivens* against a federal official in his *official*

---

[10]*Id.*

[11]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12]*See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971).

[13]*Id.* at 395-97.

[14]*See, e.g., Carlson v. Green*, 446 U.S. 14, 18 (1980) (recognizing a *Bivens* action for Eighth Amendment violations).

6

capacity.[15]  In *Farmer v. Perrill*,[16] the Tenth Circuit explained that "an official-capacity suit contradicts the very nature of a *Bivens* action" and that "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."[17]  Instead, an action against a federal official in his official capacity is construed as an action against the United States.[18]

And, a suit for damages against the United States is barred by sovereign immunity unless such immunity has been waived.[19]  The United States has not waived sovereign immunity in *Bivens* actions.[20]  Because plaintiffs' claims are all *Bivens* claims, all such official capacity claims are barred by the doctrine of sovereign immunity.   This would include plaintiff's official capacity claims against defendant Bureau of Prisons Inmate Trust Fund ("ITF") as a defendant.  The ITF is a trust fund managed by the BOP and funded by commissary sales in federal prisons.[21]  As such, the ITF, is an entity of the United States government, that may only be sued in its official capacity; but such claims are barred by sovereign immunity.  And, because the ITF does not employ individual officials, plaintiff cannot allege an individual capacity *Bivens* claim against ITF.

---

[15]*Simmat v. United States Bureau of Prisons*, __F.3d__, No. 03-3361, 2005 WL 1541070, at *6 (10th Cir. July 1, 2005); *see Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert denied*, 125 S. Ct. 344 (2004) ("a *Bivens* claim cannot be brought against . . . defendants in their official capacities").

[16]275 F.3d 958 (10th Cir. 2001).

[17]*Id.* at 963.

[18]*Id.*

[19]*Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

[20]*Laury v. Greenfield*, 87 F. Supp. 2d 1210, 1213 (D. Kan. 2000); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994).

[21]31 U.S.C. § 1321(a)(22).

Thus, the official capacity claims against all defendants are dismissed for lack of subject matter jurisdiction.  Further, defendant ITF is dismissed with prejudice, for lack of subject matter jurisdiction.

### 2. Individual Capacity Claims

Under *Bivens*, federal officials may be individually liable for constitutional violations performed under color of federal authority.[22]  Qualified immunity is a defense to a *Bivens* action.[23]  In *Saucier v. Katz*,[24] the Supreme Court explained that qualified immunity shields a government official from liability for damages incurred in the performance of discretionary functions as long as the official's conduct meets a two-part inquiry.[25]  The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.[26]  The next sequential step is to ask whether the right was clearly established so that a reasonable official would understand what he is doing violates that right.[27]  Courts use an objective standard, evaluating the official's conduct in light of the state of the law at the time of the purported constitutional or statutory violation.[28]  Qualified immunity is "an *immunity from suit* rather than a mere defense to

---

[22]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 391 (1971) (concluding that federal agents may be held individually liable for Fourth Amendment violations).

[23]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[24]533 U.S. 194 (2001).

[25]*Id.* at 201.

[26]*Id.*

[27]*Id.* at 201-02 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[28]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."[29]

Under the threshold inquiry of a qualified immunity analysis, the Court first must determine whether, taking plaintiff's allegations as true, defendants violated plaintiff's constitutional rights.[30] Plaintiff alleges that he was assaulted by ETS from the cigarette smoke of other inmates' and staff when he was incarcerated at USP Leavenworth.  The Supreme Court has concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment.[31]   Additionally, the Supreme Court has held that exposing a prison inmate to ETS can violate a prisoner's right to be free from cruel and unusual punishment under the Eighth Amendment.[32]  A prisoner may establish such a claim under the Eighth Amendment by meeting a two part test.[33]  The objective prong of the test requires the prisoner to show that he is "being exposed to unreasonably high levels of ETS."[34]  The subjective prong requires the prisoner to show that the defendants were deliberately indifferent to the hazards of exposing plaintiff to ETS "determined in light of the prison authorities' current attitudes and conduct."[35]

Defendants assert that plaintiff was not exposed to unreasonable levels of ETS because the

---

[29]*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[30]*Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)).

[31]*Estelle v. Gamble*, 429 U.S. 97, 104 (2003).

[32]*Helling v. McKinney*, 509 U.S. 25, 35 (1993).

[33]*Id.*

[34]*Id.*

[35]*Id.*

non-smoking policies at USP Leavenworth were enforced.  Defendants further assert that plaintiff's health problems have not been affected by the alleged ETS exposure.  Defendants also claim that they were not indifferent to plaintiff's complaints of ETS because each complaint was reviewed and considered.

However, at this stage of threshold inquiry, the Court must take plaintiff's allegations as true.  Plaintiff claims he was subjected to ETS during his incarceration at USP Leavenworth.  Plaintiff claims he was housed with a cell mate who smoked in the cell.  He claims that his requests to be removed from ETS exposure were ignored.  Plaintiff asserts that as an asthma sufferer and cardiac patient, his health problems were exacerbated by his ETS exposure.  In this threshold inquiry of qualified immunity analysis, taking plaintiff's claims as true, plaintiff's allegations are sufficient to assert a violation of a constitutional right under *Estelle* and *Helling*.

Additionally, plaintiff has met the second part of the *Saucier* test by demonstrating that the constitutional right was clearly established so that a reasonable official would understand what he is doing violates that right.  "The right recognized by the *Helling* decision is 'clearly established' so that a reasonable prison official would know when he is violating that right."[36]  Plaintiff has alleged that he was subjected to ETS at USP Leavenworth and that prison officials ignored his complaints regarding this exposure.  Under the *Saucier* standard, plaintiff's allegations are sufficient to survive defendants'

---

[36]*Atkinson v. Taylor*, 316 F.3d 257, 264 (3d Cir. 2003).  *See also Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (holding that *Estelle v. Gamble*, 429 U.S. 97 (1976), clearly established that prison officials could not be deliberately indifferent to a prisoner's existing serious medical needs caused by ETS); *Alvarado v. Litscher*, 26 F.3d 648, 651 (7th Cir. 2001) ("[Plaintiff]'s complaint stated an Eighth Amendment claim when he alleged that because of the prison officials' deliberate indifference, he was being exposed to levels of ETS which aggravated his chronic asthma, thereby endangering his existing health, a claim recognized as an Eighth Amendment violation twenty-five years ago in *Estelle v. Gamble* . . . .").

motion to dismiss based on qualified immunity.

### B.      Personal Jurisdiction

Defendants Hershberger, Estate of N. Lee Conner, Hawk-Sawyer, Lappin and Watts move to dismiss for lack of personal jurisdiction.  For the Court to exercise personal jurisdiction over these defendants, plaintiff must show that they purposely directed activities to the forum state and that this litigation arose as a result of injuries related to those activities.[37]  A defendant's contacts with the forum state that include signing the review of a plaintiff prisoner's appeals and occasionally advising senior prison staff members are not sufficient contacts to permit a court to exercise personal jurisdiction over such defendants.[38]

The Complaint states that defendants Hawk-Sawyer, Lappin and Watts are all employed by the BOP in Washington, D.C.  Plaintiff alleges that these three defendants received his letters, reviewed his complaints and signed his appeals.  Plaintiff further alleges that defendant Lappin visited USP Leavenworth where he was made personally aware of the ETS problem by prison inmates.  Plaintiff also alleges that these inmates told Lappin that prison officials were failing to enforce the non-smoking policies.  Plaintiff alleges no other contacts to the forum state by these three defendants.  Because their contacts with the forum state involved administrative activities such as signing appeals and advising prison officials, there are insufficient contacts to support a finding of personal jurisdiction over defendants Hawk-Sawyer, Lappin or Watts.   However, the Complaint states sufficient contacts to

---

[37]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[38]*Johnson v. Rardin*, 952 F.2d 1401, 1992 WL 9019, at *1 (10th Cir. Jan. 17, 1992) (unpublished table opinion); *Cuoco v. Hurley*, No. 98-D-2438, 2000 WL 1375273, at *1 (D. Colo. Sept. 22, 2000).

support personal jurisdiction in Kansas with respect to defendant Estate of N. Lee Conner, as Conner

was the Warden at USP Leavenworth.  The Complaint likewise states sufficient contacts with respect

to defendant Hershberger, the North Central Regional Director for the BOP, who is located in Kansas.

### C.   Insufficiency of Service and Insufficiency of Service of Process

Defendants Hershberger, the Estate of N. Lee Conner, Hawk-Sawyer, Lappin, Watts and

John Doe One move to dismiss for insufficiency of process and insufficiency of service of process under

Fed. R. Civ. P. 12(b)(4) and 12(b)(5).  *Bivens* actions against federal employees require personal

service pursuant to Fed. R. Civ. P. 4(e) or waiver of process under Fed. R. Civ. P. 4(d).[39]  In this

case, the clerk of the court was ordered on September 2, 2004 to issue appropriate summons and

waivers on behalf of plaintiff pursuant to Fed. R. Civ. P. 4.  Waivers of service as to all defendants

were issued on September 7, 2004.  To date, service has been effected on defendants Gallegos,

McCollum, Jett, Veach, Howell, Bennett, Sedillo, Buser and Swanson, all of whom executed waivers

of service.

But, to date, waivers of service have not been executed, and thus service has not been effected

on the moving defendants Hershberger, the Estate of N. Lee Conner, Hawk-Sawyer, Lappin, Watts

and John Doe One.  Thus, service has not been properly made on these defendants, and pursuant to

Fed.R.Civ.Pro. 4(m), the Court concludes that these defendants should be dismissed.  Plaintiff has

failed to effect service within the 120 day time limit in Fed. R. Civ. Pro. 4(m).   Indeed, plaintiff has

failed to effect service within 400 days.  These plaintiffs have not filed an Answer; they have filed a

---

[39] *Armstrong v. Sears*, 33 F.3d 182, 187 (2d Cir. 1994).

motion to dismiss on jurisdictional grounds.  The Court will thus dismiss without prejudice, defendants Hershberger, Estate of N. Lee Conner, Hawk-Sawyer, Lappin, Watts and John Doe One.

Defendants further argue that the claims against John Doe One must be dismissed because John Doe One has not been properly identified and has not been properly served.  It is appropriate for a court to dismiss John Doe defendants when the plaintiff fails to name or identify the defendants in the pleadings or fails to describe particular acts by a certain defendant.[40]  However, an action may proceed against unknown defendants when plaintiff provides enough information to locate and eventually serve the appropriate defendants.[41]  In this case, plaintiff has named John Doe One as an employee with the BOP who works at the North Central Regional Office and who signed the responses to plaintiff's Administrative Remedy Number 289244-R1.  Plaintiff has also provided this employee's address in Kansas City, Kansas.  Plaintiff has provided sufficient information to locate and serve John Doe One; yet plaintiff has failed to effect service.

The Court's docket further reveals that after more than 400 days, defendants Marberry, Nitchals, and Wilson have not been served.  They have not executed waivers of service, nor been served with summons.  Like the other defendants, they have not filed an Answer, but have filed a motion to dismiss on jurisdictional grounds.   Because the plaintiff has failed to effect service in this length of time, the Court will dismiss without prejudice, defendants Marberry, Nitchals and Wilson,

---

[40]*Hill v. Corrections Corp. of America*, 14 F. Supp. 2d 1235, 1238 (D. Kan. 1998).

[41]*See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 n.1 (1971) (stating "the agents were not named in petitioner's complaint, and the District Court ordered that the complaint be served upon 'those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the (petitioner).'  Five agents were ultimately served.").

pursuant to Fed.R.Civ.Pro. 4(m).

### D. Failure to State a Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[42]  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[43]  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."[44]

On a Rule 12 (b)(6) motion, the court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff.[45]  The court construes the allegations in the light most favorable to the plaintiff.[46]  These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."[47]  "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, his complaint cannot pass Rule 12(b)(6) muster."[48]  Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules

---

[42]Fed. R. Civ. P. 12(b)(6).

[43]*Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citation omitted).

[44]*Mounkes v. Conklin,* 922 F. Supp. 1502, 1506 (D. Kan. 1996) (quotation omitted).

[45]*Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir. 1987).

[46]*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991).

[47]*Associated Gen. Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983) (footnote omitted).

[48]*Mounkes,* 922 F. Supp. at 1506 (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir. 1988) (quotation omitted)).

of pleading while protecting the interest of justice.[49]

### 1. Eighth Amendment Standard

Prisoners are constitutionally entitled under the Eighth Amendment to "humane conditions of confinement guided by 'contemporary standards of decency.'"[50]  Prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety."[51]  A prisoner may establish a claim under the Eighth Amendment for compensatory relief by alleging that prison officials "have with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."[52]  To determine whether prison officials have violated a prisoner's Eighth Amendment rights, a prisoner must satisfy a two part test consisting of an objective and subjective prong.[53]  The objective prong requires the prisoner to show that he is "being exposed to unreasonably high levels of ETS."[54]  Additionally, the court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwilling to such a risk."[55]  The subjective prong requires the prisoner to show that the defendants were

---

[49]Id.

[50]Penrod v. Zavaras, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

[51]Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)).

[52]Helling v. McKinney, 509 U.S. 25, 35 (1993).

[53]Id.

[54]Id.

[55]Id. at 36.

deliberately indifferent to the hazards of exposing plaintiff to ETS "determined in light of the prison authorities' current attitudes and conduct."[56]

### 2. Plaintiff's Claims Are Sufficient to State a Claim

As stated above, plaintiff claims he was subjected to ETS during his incarceration at USP Leavenworth. He asserts that he was housed with a cell mate who smoked in the cell and that his requests to be removed from ETS exposure were ignored. Plaintiff also claims that this exposure to ETS has exacerbated his health problems. Conversely, defendants assert that plaintiff was not exposed to unreasonable levels of ETS because the non-smoking policies at USP Leavenworth were enforced. Defendants claim that plaintiff's medical condition has not been affected by ETS. Defendants also claim that they were not indifferent to plaintiff's complaints of ETS because defendants reviewed and responded to plaintiff's complaints. However, because the court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff, plaintiff's individual capacity claims are sufficient to state a claim upon which relief can be granted pursuant to a *Bivens* action for violation of his Eighth Amendment rights.

### 3. Respondeat Superior

It is well established that the doctrine of respondeat superior cannot support liability under *Bivens*.[57] To hold supervisory defendants liable, plaintiff must allege facts showing that an affirmative link exists between the alleged constitutional deprivation and defendants' "personal participation, [their]

---

[56]*Id.*

[57]*Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976); *see also Kaiser v. Lief*, 874 F.2d 732, 736 (10th Cir. 1989) (holding doctrine of respondeat superior does not apply to "an officer who has no affirmative link with the constitutional violation").

exercise of control or direction, or [their] failure to supervise."[58]  Defendants argue that plaintiff has

failed to establish an affirmative link between the alleged constitutional deprivation and the supervisory

duties of defendants Lappin, Hawk-Sawyer, Watts, Hershberger, Gallegos, McCollum, Jett, Veach,

Marberry, Nitchals, Howell, Sedillo, and Buser.[59]

      But plaintiff's Complaint alleges that "each defendant" directly participated in violating plaintiff's

constitutionally protected rights.  At the motion to dismiss stage, the Court judges the sufficiency of the

complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in

favor of the plaintiff.  In this case, because plaintiff alleges that "each defendant" violated his

constitutional rights, plaintiff's claims are sufficient to state a claim upon which relief can be granted.

### E.        Injunctive Relief

      Plaintiff seeks injunctive relief prohibiting defendants from housing plaintiff with any smokers

either in his cell or cell house.  From January 15, 2003 until June 11, 2003, plaintiff claims that he was

exposed to ETS at USP Leavenworth.  Plaintiff has since been transferred to the Metropolitan

Correctional Center ("MCC") in Chicago.  Therefore, plaintiff is no longer being subjected to the ETS

complained of from January to June 2003.  Additionally, on September 8, 2004, the BOP mandated

that all prison facilities prohibit smoking.  As of September 15, 2004, USP Leavenworth stopped

selling cigarettes in the inmate commissary.

      Plaintiff's claim for injunctive relief is moot.  At the time of the claims giving rise to this lawsuit,

---

[58]*Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[59]Defendants have not raised the respondeat superior argument with respect to defendants Eric Wilson, Robert Bennett, R.D. Swanson, the Estate of N. Lee Conner, or John Doe One.

plaintiff was incarcerated at United States Penitentiary (USP) Leavenworth.  Plaintiff has since been

transferred several times between the MCC in Chicago, Illinois and USP Leavenworth.  In June 2005,

plaintiff was again transferred to the MCC in Chicago where he currently remains.  Article III of the

United States Constitution requires that a federal court may adjudicate only "cases or controversies."

A court must "decline to exercise jurisdiction where the award of any requested relief would be

moot–i.e. where the controversy is no longer live and ongoing."[60]  Injunctive relief generally becomes

moot upon transfer between prisons;[61] moreover, because plaintiff is not currently being exposed to

ETS, his claim for injunctive relief is now moot.[62]

### F.  Denial of Motion For Summary Judgment in the Alternative

Defendants move for summary judgment in the alternative, attaching an affidavit and various

administrative documents and records to their motion.  It is well established that "[a] motion to dismiss

for failure to state a claim upon which relief can be granted must be converted into a motion for

summary judgment whenever the district court considers matters outside the pleadings."[63]  Courts have

broad discretion in determining whether or not to accept materials beyond the pleadings.[64]  Reversible

error may occur, however, if the district court considers matters outside the pleadings but fails to

---

[60]*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir., 1994) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

[61]*Davis v. Bruce*, 129 Fed. Appx. 406, 408 (10th Cir. 2005).

[62]Plaintiff asserts in his Response to Defendants' Motion to Dismiss that the Bureau of Prisons' new non-smoking policy is not being enforced by prison officials.  The Court does not have jurisdiction to issue an injunction for this alleged complaint because plaintiff must first exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a).

[63]Fed. R. Civ. P. 12(b)(6).

[64]5A Charles Alan Wright et al., Federal Practice and Procedure § 1366 (2d ed. 1990).

18

convert the motion to dismiss into a motion for summary judgment.[65] While defendants contend that the Court should convert the motion into one for summary judgment, the Court finds that a summary judgment motion is premature at this time.[66] The defendants' motion to dismiss or for summary judgment was filed as a responsive pleading at the early stages of the proceeding. A number of defendants are being dismissed in this order, for failure to effect service. The parties have not engaged in discovery; and the proffered evidentiary support for the summary judgment motion is quite limited. Defendants may reassert their motion for summary judgment at a later time. Therefore, the Court refuses to consider matters outside of the pleadings submitted by plaintiffs and defendants at this time.

## G.  Appointment of Counsel

Plaintiff requests that the Court appoint counsel to represent him in this proceeding. The right to counsel in a civil case is not a constitutional right under the Sixth Amendment.[67] However, the Court may "request an attorney to represent any person unable to afford counsel."[68] In deciding this motion, the Court must "give careful consideration to all the circumstances with particular emphasis upon certain

---

[65]*Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998) (citing *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991)).

[66]In defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, defendants assert that plaintiff's response does not comport with the requirements of Fed. R. Civ. P. 56 or D. Kan. R. 56.1. The Court must construe *pro se* pleadings liberally and apply a less stringent standard than that which is applicable to attorneys. *Whitney v. New Mexico,* 113 F.3d 1170, 1173 (10th Cir. 1997). Defendants argue that "plaintiffs must nonetheless set forth sufficient facts to support their claims." *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 674 (10th Cir. 2002). In *Diaz,* however, the *pro se* plaintiff listed "ill-defined complaints" such as accusing the defendants of corruption, conspiracy, and perpetrating a fraud without alleging any facts. In contrast, plaintiff Mansoori specifically states facts to support his claim. Moreover, because the Court refuses to treat defendants' Motion as one for summary judgment, defendants' argument is irrelevant at this stage in the proceeding.

[67]*MacCuish v. United States,* 844 F.2d 733, 735 (10th Cir. 1988).

[68]28 U.S.C. § 1915(e)(1).

factors that are highly relevant to a request for counsel."[69]  These factors include: the merits of the

plaintiff's claims; the nature of the factual issues raised in the claims, the plaintiff's ability to present his

claims, and the complexity of the legal issues raised by the claims.[70]

      In this case, plaintiff has demonstrated his ability to frame facts and state claims for relief under

various constitutional provisions.  The Complaint well pleads facts and claims, and prays for

declaratory, compensatory, and punitive relief.   In responding to defendants' motion to dismiss, plaintiff

demonstrates his understanding of what facts would be material to his claims, and he cites to statutory

and case law for appropriate rules and principles.  Furthermore, the legal issues in this case and the

factual assertions underlying the claims are not novel or difficult to state or analyze.  Therefore,

plaintiff's request for counsel is denied.

**Conclusion**

      This case was filed more than 400 days ago, on August 4, 2004.  Despite this passage of time,

no service has been effected on defendants Lappin, Hawk-Sawyer, Watts, Hershberger, Marberry,

Nitchals, Wilson, Estate of N. Lee Conner, John Doe One and Bureau of Prisons Inmate Trust Fund.

Given that the rules allow a party 120 days to effect service, and that this defendant has not effected

service within 400 days, these defendants should be dismissed.  The Court notes that even if it granted

additional time to effect service on defendants Lappin, Hawk-Sawyer and Watts, the Complaint fails to

establish sufficient contacts to endow this Court with in personam jurisdiction of these three defendants.

---

[69]*Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995) (quoting *McCarthy v. Weinberg,* 753 F.2d 836, 838 (10th Cir. 1985)).

[70]*Rucks,* 57 F.3d at 979 (citing *Williams v. Meese,* 926 F.2d 994, 996 (10th Cir. 1991)).

Moreover, although a court generally dismisses without prejudice those defendants upon whom plaintiff has failed to effect service, one defendant should be dismissed with prejudice, on separate grounds. Defendant Bureau of Prisons Inmate Trust Fund should be dismissed with prejudice for lack of subject matter jurisdiction, as all official capacity claims lack subject matter jurisdiction; and no individual capacity claim can lie against Bureau of Prisons Inmate Trust Fund.

The Court denies the motions to dismiss the individual capacity claims of defendants Gallegos, McCollum, Jett, Veach, Howell, Bennett, Sedillo, Buser and Swanson, because plaintiff has stated a claim for relief under the Eighth Amendment that survives the threshold qualified immunity analysis.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 46) is **GRANTED** in part and **DENIED** in part.

**IT IS ORDERED** that the motion to dismiss the **official capacity claims** against all defendants is **granted.**

**IT IS ORDERED** that the **motion to dismiss** the **individual capacity claims** against defendants **Lappin, Hawk-Sawyer, Watts and Bureau of Prisons Inmate Trust Fund** is **granted.**

**IT IS ORDERED** that the **motion to dismiss** the **individual capacity claims** against defendants Gallegos, McCollum, Jett, Veach, Howell, Bennett, Sedillo, Buser and Swanson is **denied.**

**IT IS ORDERED** that plaintiff's motion to strike (Doc. 48) is **DENIED.**

**IT IS ALSO ORDERED** that plaintiff's motion for appointment of counsel (Doc. 52) is **DENIED WITHOUT PREJUDICE.**

21

**IT IS ORDERED** that defendant **Bureau of Prisons Inmate Trust Fund is DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants **Lappin, Hawk-Sawyer, Watts, Hershberger, Marberry, Nitchals, Wilson, Estate of N. Lee Conner and John Doe One are DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

Dated this 21st    day of September 2005.

    S/ Julie A. Robinson
Julie A. Robinson
United States District Judge